UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAEID AZIMPOUR, on behalf of himself and all others similarly situated,<br><br>                                            Plaintiff,<br><br>v.<br><br>SEARS, ROEBUCK & COMPANY,<br><br>                                            Defendant. | Case No.: 15-CV-2798 JLS (WVG)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT SEARS, ROEBUCK & COMPANY'S MOTION TO DISMISS**<br><br>(ECF No. 26) |

    Presently before the Court is a Motion to Dismiss or, in the Alternative, Strike Plaintiff's Second Amended Complaint Pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 12(f) filed by Defendant Sears, Roebuck & Company ("Sears"). ("MTD," ECF No. 26.) Also before the Court is Plaintiff's Response in Opposition to, ("Opp'n," ECF No. 27), and Defendant's Reply in Support of, ("Reply," ECF No. 28), Defendant's MTD. The Court vacated the hearing on the MTD and took it under submission pursuant to Civil Local Rule 7.1(d)(1). (ECF No. 29.) Having considered the parties' arguments and the law, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's MTD.

/ / /

/ / /

## BACKGROUND

This action arose after Plaintiff purchased a pillow at Defendant's store in San Diego, California on July 19, 2015. (Second Amended Compl. ("SAC") ¶¶ 9, 29, ECF No. 25.) At the store, Plaintiff saw pricing information indicating that the pillow's "regular" price was $19.99, but was being offered at a "sale" price of $9.99. (*Id.*) Specifically, Mr. Azimpour examined the price sign bearing the original price and also examined the red sign, with black letters announcing, "Sale" and stating "Save $10." (*Id.*; *see also id.* Ex. B (a pricing sign that Azimpour describes as nearly identical to the price sign he observed when making his purchase).) The Sale Sign announced the discounted price of $9.99 and the regular price was described immediately next to it as, "reg. $19.99." (*Id.*) Plaintiff relied on this purported discounted price in making his purchase, (*id.*), and claims he would not have purchased the pillow but-for the misrepresented price, (*id.* ¶¶ 9, 29, 33). Additionally, upon check-out on July 19, 2015, Sears provided Plaintiff with a receipt containing the allegedly misrepresented price, specifically stating "SALE" in large, bold, all-caps lettering directly above the item he purchased. (*Id.* ¶ 31.) Plaintiff alleges that Defendant has employed a scheme to defraud consumers by advertising merchandise at fabricated "sale" prices. (*See, e.g.*, *id.* ¶¶ 1, 2, 3, 4, 32.) Plaintiff now also alleges that his "counsel's investigation has revealed" that the pillow Plaintiff purchased remained continuously on "sale" at every Sears store in San Diego County for the same price from the filing of this suit through November 8, 2016. (*Id.* ¶ 11; *see also id.* ¶¶ 19–28 (detailing Plaintiff's counsel's "investigation").)

On January 15, 2016, Plaintiff filed his Amended Complaint ("FAC") seeking a class action against Defendant for false and misleading advertisements in connection with merchandise sold in its retail stores. (FAC ¶ 1, ECF No. 10.) The Court dismissed Plaintiff's FAC for failure to plead with particularity under Rule 9(b). (*See* First MTD Order, ECF No. 22.)

Plaintiff filed his SAC on November 8, 2016. Plaintiff brings the same six causes of action, including: (1) violation of Unfair Competition Law—unlawful acts ("UCL," Cal.

Bus. & Prof. Code § 17200, *et seq.*) on behalf of the California Class; (2) violation of UCL—unfair acts (Bus. & Prof. Code § 17200, *et seq.*) on behalf of the California Class; (3) violation of the California False Advertising Law ("FAL," Cal. Bus. & Prof. Code § 17500, *et seq.*) on behalf of the California Class; (4) violation of the Consumers Legal Remedies Act ("CLRA," California Civil Code § 1750, *et seq.*) on behalf of the California Class; (5) Unjust Enrichment on behalf of the California Class; and (6) violations of the Consumer Protection Laws on behalf of Classes in states with similar laws. (*See generally* SAC, ECF No. 25.)

Defendant now moves to dismiss or, in the alternative, strike Plaintiff's SAC on various grounds. (*See generally* MTD, ECF No. 26.) The Court considers each argument in turn.

## MOTION TO DISMISS PURSUANT TO RULE 12(b)(1)

### I.  Legal Standards

#### A. *Rule 12(b)(1)*

Federal courts are courts of limited jurisdiction, and as such have an obligation to dismiss claims for which they lack subject-matter jurisdiction. *Demarest v. United States*, 718 F.2d 964, 965 (9th Cir. 1983). Because the issue of standing pertains to the subject-matter jurisdiction of a federal court, motions raising lack of standing are properly brought under Federal Rule of Civil Procedure 12(b)(1). *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). The plaintiff bears the burden of establishing he has standing to bring the claims asserted. *Takhar v. Kessler*, 76 F.3d 995, 1000 (9th Cir. 1996); *see also In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 546 F.3d 981, 984 (9th Cir. 2008) ("The party asserting jurisdiction bears the burden of establishing subject matter jurisdiction on a motion to dismiss for lack of subject matter jurisdiction.").

Rule 12(b)(1) motions may challenge jurisdiction facially or factually. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction.  By contrast, in a factual attack, the challenger disputes the truth of the

allegations that, by themselves, would otherwise invoke federal jurisdiction." *Id.* Here, Defendant's challenge is facial because it disputes whether Plaintiff's alleged harm is sufficiently particularized to confer Article III standing as well as statutory standing under the UCL and FAL. Defendant does not rely upon extrinsic evidence, but instead relies only on the pleadings. Accordingly, the Court will assume the truth of Plaintiff's factual allegations, and draw all reasonable inferences in favor of Plaintiff. *Whisnant v. United States*, 400 F.3d 1177, 1179 (9th Cir. 2005); *Safe Air for Everyone*, 373 F.3d at 1039.

### B. Article III Standing

Under Article III of the United States Constitution, a federal court may only adjudicate an action if it constitutes a justiciable "case" or a "controversy" that has real consequences for the parties. *Raines v. Byrd*, 521 U.S. 811, 818 (1997); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). A threshold requirement for justiciability in federal court is that the plaintiff have standing to assert the claims brought. *Id.*; *see also DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 (2006) ("Article III standing . . . enforces the Constitution's case-or-controversy requirement.") (citations omitted). As the sole[1] proposed class representative, Plaintiff has the burden of showing that Article III standing exists in this case. *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 978 (9th Cir. 2011).

The essence of the standing inquiry is to determine whether the party seeking to invoke the Court's jurisdiction has "alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends." *Baker v. Carr*, 369 U.S. 186, 204 (1962). Three elements form the core of the standing requirement:

> First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between

---

[1] In a class action, only one named plaintiff must meet the requirements of Article III standing. *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007).

the injury and the conduct complained of—the injury has to be fairly . . . traceable to the challenged action of the defendant, and not . . . the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Lujan*, 504 U.S. at 560–61 (quotations, citations, and footnote omitted). This irreducible constitutional minimum, often termed "Article III standing," seeks to limit the reach of the judiciary into matters properly reserved for other branches of government. *See DaimlerChrysler*, 547 U.S. at 341; *see also Valley Forge Christian Coll. v. Ams. United for Separation of Church and State, Inc.*, 454 U.S. 464, 474 (1982). Although the Supreme Court has noted that "the concept of 'Art. III standing' has not been defined with complete consistency," *Valley Forge*, 454 U.S. at 475, these three "bedrock" requirements of injury, causation, and redressability are uniformly essential to federal court jurisdiction. *Raines*, 521 U.S. at 818–20; *see also Bennett v. Spear*, 520 U.S. 154, 164–66 (1997).

### C. Statutory Standing Under the UCL and FAL

Standing under the UCL and FAL is further limited to any person "who has suffered injury in fact and has lost money or property" as a result of unfair competition. Cal. Bus. & Prof. Code §§ 17204, 17535; *see also Kwikset Corp. v. Superior Court.*, 51 Cal. 4th 310, 321 (2011). To plead standing under the UCL, a party must "(1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., *economic injury*, and (2) show that that economic injury was the result of, i.e., *caused by*, the unfair business practice or false advertising that is the gravamen of the claim." *Kwikset*, 51 Cal. 4th at 322 (emphasis in original).

## II. Analysis

The Court previously found that Plaintiff had, at minimum, "standing to sue for his alleged injury based solely on the in-store advertisement he relied on in making his pillow purchase." (First MTD Order 8, ECF No. 22.) Because Plaintiff failed to plead his fraud claims with particularity, the Court declined "to rule on whether Plaintiff has standing to

5

sue on behalf of others who have similarly relied on misrepresented pricing information." (*Id.*) The Court finds that this time around Plaintiff has pled with sufficient particularity his fraud claims under Rule 9(b) and thus now considers Defendant's arguments regarding standing.

Defendant argues that Plaintiff lacks standing for a variety of reasons, including that he lacks standing to (1) represent individuals who relied on anything other than in-store advertisements; (2) represent a class of individuals that purchased different products than Plaintiff; (3) represent a class of individuals who purchased a product discounted from an "original" price; and (4) obtain injunctive relief. (*See generally* MTD, ECF No. 26-1.) The Court considers each argument in turn.

First, Defendant argues that Plaintiff does not have standing to raise claims arising from anything other than the in-store advertising he alleges to have seen. (*Id.* at 12–13.) Plaintiff argues that Defendant conflates the standing inquiry with considerations better suited for class certification. (MTD Opp'n 14–18, ECF No. 27.) Additionally, Plaintiff has removed online purchasers from the class definition, and thus limited the class to in-store purchasers. (*Id.* at 17 (citing SAC ¶¶ 35–36, ECF No. 25).) In other words, Plaintiff's class is limited to those who "have been exposed to the same type of in-store, misleading advertising as Plaintiff." (*Id.*)

Given Plaintiff's concessions, and because the Court has already held that Plaintiff adequately alleged actual reliance based on the causal link between Defendant's in-store advertising and Plaintiff's alleged economic injury, (*see* First MTD Order 7–8, ECF No. 22), the Court finds that Plaintiff has adequately pled standing to represent at least a class of purchasers who relied on in-store advertisements in making their purchase.

But Defendant points out that while Plaintiff amended his SAC to exclude "all online purchasers" from the class definition, (*see* SAC ¶ 38, ECF No. 25), he still seeks to represent a class of individuals that may have relied on "online promotional materials, in-store displays, and print advertisements," regardless of where they made their purchase, (*id.* ¶ 3). The Court finds Plaintiff's concession that his class is limited to those who "have

been exposed to the same type of in-store, misleading advertising as Plaintiff," (MTD Opp'n 17, ECF No. 27), all but eliminates that concern.

However, to the extent Plaintiff still seeks to incorporate other media platforms into this case, the Court again finds that Plaintiff fails to adequately plead reliance on online or print advertisements, among possible others, for standing purposes. The Court understands that Plaintiff alleges he and other putative class members were exposed to a years-long campaign that might otherwise lessen the significance of the advertisement form or medium in the standing inquiry. (*See id.* at 16 n.3, ECF No. 27.) But Plaintiff's allegations of fraud stretch from 2015 through the present date, which is substantially less than the long-term advertising campaign at issue in *In re Tobacco II Cases*, 46 Cal. 4th 298, 328 (2009). As one court has similarly found:

> Plaintiffs point to *In re Tobacco II Cases*, 46 Cal. 4th 298, 306, 93 Cal. Rptr. 3d 559, 207 P.3d 20 (2009), arguing that they are not required to plead their exposure to the advertising campaign with an "unrealistic degree of specificity." Opp'n at 31. However, that case was predicated on the plaintiffs' exposure to an "extensive and long-term advertising campaign." *Id.* at 328, 93 Cal. Rptr. 3d 559, 207 P.3d 20. Plaintiffs cannot rely on *Tobacco II* unless they have alleged an advertising campaign that is similarly extensive and lengthy. *See Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 596 (9th Cir. 2012); *Delacruz v. Cytosport*, No. C 11–3532 CW, 2012 WL 1215243, at *8 (N.D. Cal. Apr.11, 2012). At best, Defendants' marketing campaign began in 2012, which is substantially less than the "long-term" campaign at issue in *Tobacco II* that lasted at least seven years. FAC ¶ 12; *Tobacco II*, 46 Cal. 4th at 306, 93 Cal. Rptr. 3d 559, 207 P.3d 20.

*Bronson v. Johnson & Johnson, Inc.*, No. C 12-04184 CRB, 2013 WL 1629191, at *3 (Breyer, J.) (N.D. Cal. Apr. 16, 2013); s*ee also Branca v. Nordstrom, Inc.* ("*Branca I*"), No. 14CV2062-MMA JMA, 2015 WL 1841231, at *4 (S.D. Cal. Mar. 20, 2015) ("However, to the extent Plaintiff's claims arise from Nordstrom's website or from the

Nordstrom Rack name itself, the Court finds Plaintiff has not sufficiently alleged economic injury or actual reliance for the purpose of standing."); *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 596 ("In the absence of the kind of massive advertising campaign at issue in *Tobacco II*, the relevant class must be defined in such a way as to include only members who were exposed to advertising that is alleged to be materially misleading.").

Second, Defendant argues that Plaintiff lacks standing to bring claims based on products different from the pillow he purchased. (MTD 14–15, ECF No. 26-1.) The Court disagrees. This case is not about a pillow—it is about a price tag. Plaintiff's allegations are based on Defendant's allegedly deceptive pricing scheme which uniformly applies to and affects all products. As one court recently explained in a similar scenario:

> Here, Plaintiff does not allege that his claims depend on what type of product a consumer purchased from Nordstrom Rack; it is immaterial for the purposes of his claims whether one purchased a pair of shoes versus a hat, so long as the item bore a "Compare At" tag. His allegations do not relate to the exact prices, percentages of savings listed on the tags, or specific characteristics of the underlying products, which would vary by product. Rather, his claims relate to the consistent format of the tags, *i.e.*, the juxtaposition of two prices, one higher than the other, the term "Compare At" and a percentage, labeled "% Savings."

*Branca v. Nordstrom, Inc.* ("*Branca II*"), No. 14CV2062-MMA (JMA), 2015 WL 10436858, at *5 (S.D. Cal. Oct. 9, 2015); *see also id.* at *3–5 (recounting the different approaches to this question among district courts). The Court finds the reasoning of the *Branca II* Court persuasive and thus finds that Plaintiff has standing to sue on behalf of purchasers of other Sears items bearing in-store price tags similar to those relied upon by Plaintiff because he is challenging the pricing scheme, not the product. Accordingly, the Court **DENIES** this portion of Defendant's MTD.

Third, Defendant argues that Plaintiff lacks standing to represent a class of individuals who purchased a product discounted from an "original" or "former" price

because he relied on a sale tag listing a "regular" price. (MTD 16, ECF No. 26-1.) Specifically, Defendant argues that these words are not interchangeable because they have different meanings under different state statutes. (*Id.*) But Defendant fails to cite a single statute—much less a case—supporting its argument. Without more, the Court **DENIES** Defendant's motion to dismiss on this basis.

Fourth, Defendant argues that Plaintiff lacks standing to obtain injunctive relief. (*Id.*) Plaintiff concedes that he is not pursuing injunctive relief and that this claim was inserted due to a scrivener's error. (MTD Opp'n 20, ECF No. 27.) Thus, the Court **GRANTS** this portion of Defendant's motion to dismiss Plaintiff's claim for injunctive relief.[2]

## MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)

### I. Legal Standards

#### A. *Rule 12(b)(6)*

Federal Rule of Civil Procedure 12(b)(6) permits a party to raise by motion the defense that the complaint "fail[s] to state a claim upon which relief can be granted," generally referred to as a motion to dismiss. The Court evaluates whether a complaint states a cognizable legal theory and sufficient facts in light of Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Although Rule 8 "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In other words, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 555 (alteration in original). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of

---

[2] While Defendant argues this language should be stricken, the Court will allow Plaintiff the opportunity to remove it himself in his amended pleading.

'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (alteration in original) (quoting *Twombly*, 550 U.S. at 557).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570); *see also* Fed. R. Civ. P. 12(b)(6). A claim is facially plausible when the facts pled "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). That is not to say that the claim must be probable, but there must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). "[F]acts that are 'merely consistent with' a defendant's liability" fall short of a plausible entitlement to relief. *Id.* (quoting *Twombly*, 550 U.S. at 557). Further, the Court need not accept as true "legal conclusions" contained in the complaint. *Id.* at 678–79 (citing *Twombly*, 550 U.S. at 555). This review requires "context-specific" analysis involving the Court's "judicial experience and common sense." *Id.* at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged— but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). The Court will grant leave to amend unless it determines that no modified contention "consistent with the challenged pleading . . . [will] cure the deficiency." *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schriber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)).

### B. Rule 9(b)

Additionally, claims that allege fraud must meet the heightened pleading standard of Rule 9(b), which requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Allegations of fraud must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985); *see also Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir.

1997) (noting that particularity requires plaintiff to allege the "who, what, when, where, and how" of the alleged fraudulent conduct). Additionally, where a plaintiff alleges "a unified course of fraudulent conduct and rel[ies] entirely on that course of conduct as the basis of a claim[,] . . . the claim is said to be 'grounded in fraud' or to 'sound in fraud,' and the pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b)." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103–04 (9th Cir. 2003) (citations omitted).

### C. California's FAL, UCL, and CLRA

California's FAL provides:

> No price shall be advertised as a former price of any advertised thing, unless the alleged former price was the prevailing market price as above defined within three months next immediately preceding the publication of the advertisement or unless the date when the alleged former price did prevail is clearly, exactly and conspicuously stated in the advertisement.

Cal. Bus. & Prof. Code § 17501. "This statute makes it unlawful for a business to disseminate any statement 'which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading . . . .'" *Arevalo v. Bank of Am. Corp.*, 850 F. Supp. 2d 1008, 1023–24 (N.D. Cal. 2011) (internal citation omitted). "The statute has been interpreted broadly to encompass not only advertising which is false, but also advertising which, although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public. . . . Consequently, even a perfectly true statement couched in such a manner that it is likely to mislead or deceive the consumer, such as by failure to disclose other relevant information, is actionable under this section." *Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1162 (9th Cir. 2012) (citations, quotations, and alterations omitted).

California's UCL prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. The UCL provides a separate theory of liability under the "unlawful," "unfair,"

11

or "fraudulent" prong. *Stanwood v. Mary Kay, Inc.*, 941 F. Supp. 2d 1212, 1222 (C.D. Cal. 2012) (citing *Lozano v. AT & T Wireless Servs., Inc.*, 504 F.3d 718, 731 (9th Cir. 2007)). "The UCL expressly incorporates the FAL's prohibition on unfair advertising as one form of unfair competition." *Hinojos*, 718 F.3d at 1103. Thus, any violation of the FAL also violates the UCL. *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (citing *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 950 (2002)).

California's CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices." Cal. Civ. Code § 1770. Among other things, the CLRA prohibits "[a]dvertising goods or services with intent not to sell them as advertised" and "[m]aking false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions." Cal. Civ. Code §§ 1770(a)(9), (13).

### D. The Reasonable Consumer Test

"To state a claim under the FAL, UCL, or the CLRA, the plaintiff must allege the defendant's purported misrepresentations are likely to deceive a reasonable consumer." *Branca I*, 2015 WL 1841231, at *6 (citing *Williams*, 552 F.3d at 938); *see also Reid v. Johnson & Johnson*, 780 F.3d 952, 958 (9th Cir. 2015) ("It is true that violations of the UCL, FAL, and CLRA are evaluated from the vantage point of a 'reasonable consumer.'"). "A reasonable consumer is 'the ordinary consumer acting reasonably under the circumstances.'" *Davis*, 691 F.3d at 1161–62 (quoting *Colgan v. Leatherman Tool Grp., Inc.*, 135 Cal. App. 4th 663, 682 (2006)). "Likely to deceive implies more than a mere possibility that the advertisement might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner. Rather the phrase indicates that the ad is such that it is probable that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misle[]d." *In re Sony Gaming Networks and Customer Data Sec. Breach Litig.*, 903 F. Supp. 2d 942, 967 (S.D. Cal. 2012) (quoting *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508 (2003)). "In determining whether a statement is misleading under the statute, the primary evidence in a false advertising case is the advertising itself." *Bruton v. Gerber Prods. Co.*, 961 F.

Supp. 2d 1062, 1092 n.20 (N.D. Cal. 2013) (internal quotations omitted).

Finally, courts have recognized that "whether a business practice is deceptive will usually be a question of fact not appropriate for decision on [a motion to dismiss]." *Davis*, 691 F.3d at 1162 (brackets in original).

## II. Analysis

Defendant argues that Plaintiff fails to (1) allege facts sufficient to state a UCL claim based on unlawful conduct; (2) state a claim for restitution, disgorgement, or (3) unjust enrichment; (4) demonstrate that he can maintain a nationwide class; and (5) comply with the mandatory CLRA notice requirements, (*see* MTD 17–29, ECF No. 26-1). The Court considers each argument in turn.

### A. Sufficiency of Allegations

Defendant argues that Plaintiff fails to allege sufficient facts to state a UCL claim based on unlawful conduct for two reasons: (1) Plaintiff alleges the pillow he bought had a "regular" price listed along a "sale" price, not a "former" price as required by the UCL; and (2) Plaintiff's allegations based on his counsel's "investigation" are insufficient to demonstrate that the pillow purchased by Plaintiff was never offered at the full retail price in the ninety days preceding his purchase. (*Id.* 17–18.)

First, Defendant argues that the violations that form the basis for Plaintiff's "unlawful" UCL claim—violations of the FTCA and California's "former price advertisement" statute—are grounded in the theory that Sears' "discounted" prices were false or misleading, but that Plaintiff does not allege facts demonstrating violations of these laws. (*Id.* at 17.) Specifically, Defendant cites California's "former price advertisement" statute, which provides, in pertinent part, that "no price shall be advertised *as a former price* of any advertised thing, unless the alleged former price was the prevailing market price as above defined with three months next immediately preceding the publication of the advertisement . . . ." (*Id.* (citing Cal. Bus. & Prof. Code § 17501 (2015) (emphasis added by Defendant)).) However, Defendant argues that Plaintiff alleges the pillow he bought had the "regular" price listed alongside a "sale" price. (*Id.* (citing SAC ¶¶ 9, 29,

ECF No. 25).) Thus, Defendant concludes that Plaintiff's claim must fail because he did not allege he was shown a "former" price, or any language that might indicate a former price comparison (e.g., "formerly," "was," "previously," etc.).

This argument is unpersuasive. Not only does Defendant fail to cite a single case—or other authority—in support of its argument, it more importantly fails to address other authority rejecting this very argument, which the Court finds persuasive. *See, e.g.*, *Knapp v. Art.com, Inc.*, No. 16-CV-00768-WHO, 2016 WL 3268995, at *5 (N.D. Cal. June 15, 2016) (rejecting a similar argument and finding that "[v]iewed in the light most favorable to the nonmoving party, these allegations are sufficient to plausibly establish that Knapp interpreted the '40% off' language as advertising a discount from Art.com's former prices. Indeed, it is not clear how else Knapp could have reasonably understood the '40% language' other than as advertising a discount from Art.com's former prices"). Accordingly, Defendant has failed to meet its burden and the Court **DENIES** this portion of Defendant's MTD.

Defendant's second argument also fails. As an initial matter, Defendant argues that the Court should discount Plaintiff's counsel's investigation because it may be a potential violation of the rules of professional ethics. (MTD Reply 7, ECF No. 28 (citing *Rael v. N.Y. & Co., Inc.* ("*Rael I*"), No. 16-CV-369-BAS(JMA), 2016 WL 7655247 (S.D. Cal. Dec. 28, 2016)).) In *Rael I*, the Court faced a similar investigation brought by the same counsel in the present case. *See Rael I*, 2016 WL 7655247, at *7. The *Rael I* Court found the investigation itself "disturbing," *id.*, and cautioned counsel "to consider the Professional Ethical rule that prohibits an attorney from being a witness in his own case," *id.* at n.2 (citing Cal. Rule of Prof. Conduct 5-210).

/ / /
/ / /
/ / /
/ / /
/ / /

While Plaintiff's counsel's testimony, based on his investigation, might help establish the allegedly unlawful marketing practices at Sears, there is no indication that his counsel seeks to serve as a fact witness in this case.[3] Rather, at this early stage, this investigation appears to serve only as a potential key to open the doors of discovery. The discovery revealed, then, rather than his counsel, would likely serve as the evidence confirming or denying the allegedly deceptive marketing ploys at Sears. The Court finds that, so limited, Plaintiff counsel's "investigation," (*see* SAC ¶¶ 19–28, ECF No. 25), can be properly used to supplement the allegations of Plaintiff's SAC.

And so it does. Plaintiff's counsel monitored Sears retail stores for months before Plaintiff purchased his pillow. (*Id.* ¶ 20.) Among other things, the investigation revealed that several items (including Plaintiff's pillow) were purportedly on "sale" for at least three months—and sometimes beyond that—preceding Plaintiff's pillow purchase. (*Id.* ¶ 22 (collecting evidence).) And Plaintiff's pillow remains on "sale" to this day at the identical regular-and-sale price that Plaintiff paid on July 19, 2015. (*Id.* ¶ 25.) Thus, this investigation answers the questions posed to this same counsel by other courts. *See, e.g.*, *Rael v. Dooney & Bourke, Inc.* ("*Rael II*"), No. 16CV0371 JM (DHB), 2016 WL 3952219, at *3 (S.D. Cal. July 22, 2016) ("Moreover, even assuming Mr. Carpenter's submission is competent and relevant, Mr. Carpenter does not in any way specify the details of his investigation. Did he visit any D&B retail or outlet stores? Did he visit the D&B website, and if so, on which dates? Which products, if any, are discounted beyond the 90-day period? Did he attempt to search for the handbag purchased by Plaintiff to determine if its pricing was false and if so, on what basis? As pointed out by Defendants, Plaintiff does not even identify which specific D&B purse she purchased."); *Rael I*, 2016 WL 7655247, at * 7 ("Even if the Court takes into account the new facts presented by Mr. Carpenter, his

---

[3] However, to the extent Plaintiff's counsel *does* seek to serve as a fact witness in this case, the *Rael I* Court's warning is well taken. Additionally, because the issue of the impropriety of the investigation is not presently before the Court, the Court makes no determination of whether the investigation is itself unlawful—under either the California Rules of Professional Conduct or any other law.

declaration does not specify a single detail of his alleged investigation. The declaration is simply a restatement of the conclusory allegations that Plaintiff states in her SAC."). This investigation and the accompanying allegations, of course, do not prove that these items were never offered at the "original" or "regular" price during the relevant period. But they do plausibly suggest that they were not. This is sufficient under Rule 9(b). *See Rubenstein v. The Neiman Marcus Group, LLC*, No. 15-55890, 2017 WL 1381147, at *2 (9th Cir. Apr. 18, 2017). Accordingly, the Court **DENIES** this portion of Defendant's MTD.

## B. Restitution and Disgorgement

Defendant argues that Plaintiff is not entitled to a disgorgement remedy as a matter of law under the UCL. (MTD 18, ECF No. 26-1 (citing *Kraus v. Trinity Mgmt. Servs. Inc.*, 23 Cal. 4th 116, 129 (2000) (noting that "restitution is the only monetary remedy expressly authorized by . . . [the UCL]")).) Defendant also argues that Plaintiff is not entitled to restitution because Plaintiff cannot show he gave Sears more than the value of what he received in return. *Id.*

The Court disagrees. While Defendant is right that *Kraus*, 23 Cal. 4th at 129, states that "restitution to a person in interest is the only monetary remedy for violation of the UCL," Defendant fails to cite any authority demonstrating that the cost-minus-value method is the only measure used to calculate restitution.[4]

Indeed, another court recently considered and rejected Defendant's argument, noting that

> [none of Defendant's cited] cases . . . articulate an exclusive
> measure of restitution; they merely reiterate the unremarkable
> proposition that restitution requires the plaintiff to account both

---

[4] Defendant's reliance on *Cortez v. Purolator Air Filtration Prods. Co.*, 23 Cal. 4th 163 (2000), is misplaced. While the court generally defined restitution as "the return of the excess of what the plaintiff gave the defendant over the value of what the plaintiff received," *Cortez*, 23 Cal. 4th at 174, the court also noted that Section 17203 authorizes the court to fashion remedies to prevent, deter, and compensate for unfair business practices, including a broad discretion to issue "orders or judgments . . . as may be necessary to restore to any person . . . any money or property" acquired by means prohibited under California's consumer protection laws. *Id.* (citing Cal. Bus. & Prof. Code § 17203).

for what she gave up and any benefits she received. A plaintiff may account for benefits received in a variety of ways beyond the cost minus value measure. *See Pulaski*, 2015 WL 5515617; *In re Tobacco Cases II*, 2015 WL 5673070. In other words, plaintiffs may pursue alternative measures of restitution as long as the recovery sought represents a measurable amount supported by the evidence. *Colgan*, 38 Cal. Rptr. 3d at 61 ("From the authorities we conclude that restitution under the statutes involved here must be of a measurable amount to restore to the plaintiff what has been acquired by violations of the statutes, and that measurable amount must be supported by evidence.").

*Russell v. Kohl's Dep't Stores, Inc.*, No. EDCV151143RGKSPX, 2015 WL 12781206, at *4 (C.D. Cal. Oct. 6, 2015); *see also id.* at *3–5 (assessing in depth whether and concluding in the affirmative that alternative measures of restitution may be permissible); *Stathakos v. Columbia Sportswear Co.*, No. 15-CV-04543-YGR, 2016 WL 1730001, at *4 (N.D. Cal. May 2, 2016) (finding same).

Thus, at this juncture, all that remains is whether Plaintiff has pled sufficient facts to support a cognizable legal theory for recovery under the UCL; whether Plaintiff can submit sufficient evidence of a measureable amount of restitution is a premature determination at the pleading stage. Here, Plaintiff alleges that he "would not have purchased the merchandise without the misrepresentations made by Sears." (SAC ¶ 30, ECF No. 25.) Thus he requests "damages, restitution, and other appropriate relief in the amount by which Defendant was unjustly enriched as a result of its sales of merchandise offered at a false discount." (*Id.* ¶ 5.) This is sufficient to state a claim for restitution under the UCL. *See Russell*, 2015 WL 12781206, at *5 (finding same based on a similar measure of restitution); *see also Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 989 (9th Cir. 2015) (measuring restitution as "what a purchaser would have paid at the time of purchase had the purchaser received all the information"). Accordingly, the Court **DENIES** this portion of Defendant's MTD.

/ / /

### C. Unjust Enrichment

Defendant argues that the Court should dismiss Plaintiff's claim for unjust enrichment because California does not recognize an independent cause of action for unjust enrichment. (MTD 19, ECF No. 26-1.) Plaintiff responds that the Ninth Circuit has construed the common law to allow an unjust enrichment cause of action through quasi-contract, and that Plaintiff's allegations meet that standard. (MTD Opp'n 28, ECF No. 27.) In response, Defendant argues that Plaintiff "has not asserted a quasi-contract claim" and thus this cause of action should be dismissed. (MTD Reply 9, ECF No. 28.)

As an initial matter, Defendant is right that in California there is no standalone cause of action for "unjust enrichment." *See Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) (citing, e.g., *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350 (2010)). But Plaintiff is also right that "when a plaintiff alleges unjust enrichment, a court may 'construe the cause of action as a quasi-contract claim seeking restitution.'" *Id.* (citing *Rutherford Holdings, LLC v. Plaza Del Rey*, 223 Cal. App. 4th 221 (2014)). While Plaintiff has not styled his cause of action as unjust enrichment under a quasi-contract theory, he has alleged that (a) Defendant deceptively priced and advertised merchandise, (b) Plaintiff and putative class members paid for merchandise they would not have paid for but for Defendant's deceptive pricing and advertising, and (c) Defendant was unjustly enriched in retaining the revenues from these purchases because it sold products that were not of the quality, nature, fitness, or value that had been represented by Defendant. (SAC ¶¶ 80–83, ECF No. 25.) The Court thus construes this cause of action as a quasi-contract claim seeking restitution. *See, e.g.*, *Astiana*, 783 F.3d at 762 ("Astiana alleged in her First Amended Complaint that she was entitled to relief under a 'quasi-contract' cause of action because Hain had 'entic[ed]' plaintiffs to purchase their products through 'false and misleading' labeling, and that Hain was 'unjustly enriched' as a result. This straightforward statement is sufficient to state a quasi-contract cause of action."); (*see also* MTD Opp'n 28–29, ECF No. 27 (collecting cases finding same)). Accordingly, the Court **DENIES** this portion of Defendant's MTD.

### *D. Nationwide Class Allegations*

Defendant moves to dismiss or strike Plaintiff's sixth cause of action on behalf of a nationwide class. Specifically, Defendant argues that Plaintiff cannot maintain such a class because (1) applying California law to a nationwide class would violate due process, and (2) California law may not be applied to class members from states whose consumer protection laws differ materially from California's. (MTD 19, ECF No. 26-1.) Plaintiff responds that his SAC plainly states that each of the California claims (UCL, FAL, and CLRA) are only brought on behalf of a *California* class, (*see* SAC First Cause of Action–Fifth Cause of Action, ECF No. 25), and that he will instead seek to certify *multistate* class claims, rather than a nationwide class, (*see id.* Sixth Cause of Action (listing states with purportedly similar consumer protection laws)). (MTD Opp'n 30, ECF No. 27.)

Regardless of the nomenclature, the Court finds that Plaintiff lacks constitutional standing to represent a class of consumers under these various state statutes.[5] As this Court recently explained:

> The overwhelming majority of courts have held that Article III standing for state law claims is necessarily lacking when no plaintiff is alleged to have purchased a product within the relevant state. *E.g.*, *In re Capacitors Antitrust Litig.* ("*Capacitors*"), 154 F. Supp. 3d 918, 926 (N.D. Cal. 2015) (noting "the strong trend in this district and in other courts is to require an in-state purchase to establish Article III standing for state antitrust and related consumer protection claims like the ones alleged in this case" and collecting cases). This is because injury in fact is not established. *Id.* Indeed, the Supreme Court has explicitly defined "injury in fact" as "an invasion of a <u>legally</u>

---

[5] While Defendant does not specifically argue this point, the Court has an inherent obligation to determine whether it has subject matter jurisdiction over an action, which unquestionably includes whether a plaintiff has Article III standing to bring particular claims before a federal court. This applies even in the context of putative class claims. *See, e.g.*, *Easter v. Am. W. Fin.*, 381 F.3d 948, 962 (9th Cir. 2004) ("The district court correctly addressed the issue of standing before it addressed the issue of class certification" (quoting *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 831 (1999), for the proposition that a "court must be sure of its own jurisdiction before getting to the merits")).

protected interest" that is "not conjectural or hypothetical." *Lujan*, 504 U.S. at 560, 112 S. Ct. 2130 (emphasis added). In the absence of a named Plaintiff who has purchased a product within the relevant state—even if there are sufficient allegations of injury under other States' or federal law—there can be no determination that an interest was harmed that was legally protected under the relevant state's laws. Further, to merely posit that putative class members suffered a particular injury that no member currently before the Court even allegedly suffered is the very definition of conjecture.

*In re Packaged Seafood Prod. Antitrust Litig.*, _ F. Supp. 3d _, No. 15-MD-2670 JLS (MDD), 2017 WL 1010329, at *36 (S.D. Cal. Mar. 14, 2017) (emphases in original).

Here, there are no named plaintiffs from the various state statutes listed in Plaintiff's sixth cause of action, much less named plaintiffs who reside in those states and actually purchased a product from Sears in reliance on its allegedly deceptive sales tactics. Rather, Plaintiff Azimpour, the only named Plaintiff, "resides in San Diego County, California." (SAC ¶ 9, ECF No. 25.) Thus, while Plaintiff has standing to represent a class of Californians under California consumer protection laws, (*see id.* ¶ 88(c)), Plaintiff's sixth cause of action is otherwise **DISMISSED** for lack of constitutional standing. *See also Rael I*, 2016 WL 7655247, at * 4 (finding same based on similar claims); *Rael II*, 2016 WL 3952219, at *5 (same).

### E. Compliance with CLRA Notice Requirements

Finally, Defendant argues that Plaintiff failed to comply with the mandatory CLRA notice requirements. (MTD 27–28, ECF No. 26-1.) Specifically, Defendant argues that Plaintiff's letter merely makes general, unfounded allegations and fails to identify the acts, goods, or services at issue. (*Id.* at 28–29.)

"The CLRA's notice requirement is not jurisdictional, but compliance with this requirement is necessary to state a claim." *Cattie v. Wal–Mart Stores, Inc.*, 504 F. Supp. 2d 939, 949 (S.D. Cal. 2007). Specifically, the CLRA requires the consumer to notify the defendant of "the particular alleged violations" and demand that they be corrected. Cal.

Civ. Code § 1782(a). "Under the CLRA, a plaintiff must provide notice that he is anticipating a suit for damages 30 days before filing such suit." *In re Mattel, Inc.*, 588 F. Supp. 2d 1111, 1119–20 (C.D. Cal. 2008) (citing Cal. Civ. Code § 1782(a)). "A plaintiff may alternatively file suit for injunctive relief without notice, give notice of intent to amend the claims to add a claim for damages, and amend thirty days after the notice." *Id.* (citing Cal. Civ. Code § 1782(d)).

Here, Plaintiff sent his pre-suit CLRA letter on December 10, 2015, (Carpenter Decl. Ex. 3 ("CLRA letter"), ECF No. 27-1), and filed his original Complaint on December 11, 2015, seeking only injunctive relief under the CLRA, (*see* ECF No. 1, Fifth Cause of Action). The CLRA letter asserts specific violations under three subsections of the CLRA, describes Defendant's allegedly unlawful "sale" pricing scheme that deceives consumers into purchasing items based on the false belief they are receiving a bargain, and demands that Defendant remedy its unlawful behavior. (*See* CLRA letter.) This is sufficient notice under the CLRA. *See, e.g.*, *In re Easysaver Rewards Litig.*, 737 F. Supp. 2d 1159, 1179 (S.D. Cal. 2010) ("The first page of the letter explains in plain language the conduct that Plaintiffs allege violates the statute. The second page lists five sub-sections of the CLRA, and asks for specific corrections and remedies. The content of the letter suffices to put Provide on notice of the alleged CLRA violations."); *Stickrath v. Globalstar, Inc.*, 527 F. Supp. 2d 992, 1002 (N.D. Cal. 2007) (finding same based on similar CLRA notice letter). Accordingly, the Court **DENIES** this portion of Defendant's MTD.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

## CONCLUSION

In light of the foregoing, Defendant's Motion to Dismiss, or, in the Alternative, Strike Plaintiff's SAC is **GRANTED IN PART** and **DENIED IN PART**. Consistent with this Order, Plaintiff **SHALL FILE** an amended complaint, if any, <u>on or before fourteen (14) days of the date on which this Order is electronically docketed</u>.

**IT IS SO ORDERED.**

Dated:  April 26, 2017

*Janis L. Sammartino*

Hon. Janis L. Sammartino
United States District Judge

15-CV-2798 JLS (WVG)